# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **CHARLIE R. COLLINS, JR.,** ) | |
| Plaintiff ) | Civil Action No. 2:22cv00015 |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of Social** ) | By: PAMELA MEADE SARGENT |
| **Security,** ) | United States Magistrate Judge |
| Defendant ) | |

*I. Background and Standard of Review*

Plaintiff, Charlie R. Collins, Jr., ("Collins"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Collins protectively filed applications for DIB and SSI[1] on January 19, 2021, alleging disability as of January 31, 2017, due to a learning disability; post-traumatic stress disorder, ("PTSD"); hepatitis C; bi-polar disorder; depression; anxiety; back problems; arthritis; and high blood pressure. (Record, ("R."), at 12, 266-75, 310, 332.) The claims were denied initially and on reconsideration. (R. at 150-86.) Collins requested a hearing before an administrative law judge, ("ALJ"). (R. at 187-88.) A hearing was held on February 4, 2022, at which Collins was represented by counsel. (R. at 37-56.)

By decision dated February 24, 2022, the ALJ denied Collins's claims. (R. at 12-30.) The ALJ found Collins met the nondisability insured status requirements of the Act for DIB purposes through March 31, 2022. (R. at 14.) The ALJ found Collins had not engaged in substantial gainful activity since January 31, 2017, the alleged onset date.[2] (R. at 14.) The ALJ determined Collins had severe impairments, namely foot impairments, including cavus deformity, plantar fasciitis

---

[1] On November 16, 2018, Collins filed applications for DIB and SSI alleging disability beginning January 31, 2017. (R. at 60.) By decision dated October 14, 2020, an ALJ denied Collins's claims. (R. at 60-84.) After the ALJ issued his decision, Collins pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 91-95.) Collins then filed an action in this court seeking review of the ALJ's unfavorable decision. *See Charlie R. Collins, Jr. v. Kilolo Kijakazi,* Civil Action No. 2:21cv00014. By Order dated August 31, 2022, this court affirmed the Commissioner's decision denying benefits. *See Collins*, Civil Action No. 2:21cv00014.

[2] Therefore, Collins must show that he became disabled between January 31, 2017, his alleged disability onset date, and February 24, 2022, the date of the ALJ's decision, to be eligible for DIB benefits.

and tendonitis; obesity; lumbago; hepatitis C; PTSD; learning disorder; depression; anxiety; and a substance use disorder, but he found Collins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-16.)

The ALJ found Collins had the residual functional capacity to perform light[3] work, except he was limited to instructions and tasks that could be learned in 30 days or less; and he was limited to no more than occasional decision-making and changes in the work setting; and no more than occasional interaction with the public, co-workers and supervisors.[4] (R. at 19.) The ALJ found Collins was unable to perform any of his past relevant work. (R. at 28.) Based on Collins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Collins could perform, including the jobs of a small parts assembler, a lens inserter and a table worker. (R. at 29-30, 53-54.) Thus, the ALJ concluded Collins was not under a disability as defined by the Act, from January 31, 2017, through the date of the decision, and he was not eligible for SSI and DIB benefits. (R. at 30.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2022).

After the ALJ issued his decision, Collins pursued his administrative appeals, (R. at 384-86), but the Appeals Council denied his request for review. (R. at 1-5.) Collins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2022).

[4] The ALJ also placed several limitations on Collins's physical work-related abilities; however, since Collins's argument centers around his mental limitations, the court will discuss only the limitations related to his mental residual functional capacity. (R. at 19.)

404.981, 416.1481 (2022). This case is before this court on Collins's motion for summary judgment filed January 16, 2023, and the Commissioner's motion for summary judgment filed February 21, 2023.

## II. Facts

Collins was born in 1981, (R. at 266), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education and vocational training in masonry. (R. at 41, 311.) Collins has past relevant work as a maintenance worker for the Town of Lebanon and as a construction worker. (R. at 41.) Collins stated he was enrolled in special education classes. (R. at 41, 311.) Collins stated he experienced nervousness and anger issues because of being sexually abused as a child. (R. at 42-43.) He stated he isolated himself in his bedroom because of his anger issues. (R. at 46.) Collins stated he received treatment for drug use and had not used an illegal drug or prescription drug that was not prescribed to him for eight years. (R. at 43.) He stated he continued with maintenance therapy and was prescribed Suboxone for pain. (R. at 43-44.) Collins stated he experienced anxiety attacks a couple of times a week but, at times, he experienced them twice a day. (R. at 47-48.)

In rendering his decision, the ALJ reviewed records from Richard Milan, Jr., M.D., a state agency psychologist; Stephen P. Saxby, Ph.D., a state agency psychologist; Abingdon Integrative Psychiatry; William A. Davis Clinic, ("Clinic"); and Crossroads Treatment Centers, ("Crossroads").

From May 2019 through November 2021, Collins participated in counseling at the Clinic to address PTSD, depression and opioid dependence. Collins reported

anger, irritability, difficulty sleeping, anxiety, difficulty focusing and dealing with groups of people, crying spells, intrusive thoughts of childhood trauma[5] and isolation. (R. at 781, 786, 815, 849, 993.) On May 15, 2019, Anita Renee D. Coe, N.P.-C., a certified nurse practitioner with the Clinic, saw Collins for chronic pain. (R. at 821-30.) Collins denied symptoms of depression, anxiety and change in sleep pattern. (R. at 823.) Coe reported Collins was unkempt with a strong odor of grass and gasoline; he had appropriate judgment and good insight; he was fully oriented; his recent and remote memory were intact; and his mood was euthymic with an appropriate affect. (R. at 823-24.) Coe diagnosed PTSD. (R. at 824.)

On May 21, 2019, Dr. Seth Thompson, M.D., completed a medical evaluation for the Wise County Department of Social Services. (R. at 1296-97.) Dr. Thompson opined that Collins could not work for 12 months due to PTSD and recommended he apply for disability benefits. (R. at 1296-97.) Dr. Thompson diagnosed PTSD and depression/anxiety and found that Collins's condition did not hinder his ability to care for his children. (R. at 1297.)

On May 28, 2019, Collins saw Katherine Barnett, L.C.S.W., a licensed clinical social worker with the Clinic, reporting Seroquel[6] helped him sleep. (R. at 815.) In May and June 2019, Barnett reported Collins had mild body odor; he had a depressed, anxious and irritable mood with congruent affect; he made normal eye contact; his insight was limited; his judgment and speech were normal; he had

---

[5] Collins identified multiple traumas, including being molested as a child and witnessing his mother be beaten by her second husband. (R. at 816.) He also stated his first wife would "pull knives" on him. (R. at 815.)

[6] On July 8, 2019, Collins reported increased depression and irritability and stated he had not taken Seroquel in two to three weeks because "my pharmacy doesn't have it." (R. at 781.) He stated it did not help him sleep at night and made him feel sleepy during the day. (R. at 781.) Barnette's examination findings remained unchanged. (R. at 782-83.)

passive suicidal ideations but denied plan or intent; he was fully oriented; and he exhibited no hallucinations, delusions or paranoia. (R. at 787-88, 817-18.) She diagnosed major depressive disorder, single episode, moderate; opioid dependence, uncomplicated; PTSD, chronic; and anxiety disorder. (R. at 788, 818.)

From May 2019 through November 2021, Collins underwent monthly psychotherapy and case management for polysubstance abuse/dependence with medication assisted treatment at Crossroads. (R. at 1318-61.) Dr. Thompson reported Collins was fully oriented; his hygiene and grooming were good; his mood was depressed with a congruent affect; he made good eye contact; his thought process and content were organized, logical, linear and goal-directed; his insight, judgment and impulse control were normal; and he had no suicidal or homicidal ideations. (R. at 1322.) Collins reported he was doing well and staying active with work/school/family, and he was alert and cooperative. (R. at 1318, 1326, 1329-30, 1333-34, 1338, 1342, 1346, 1348-49, 1352-53.) He reported mood stability. (R. at 1326, 1338, 1342, 1346, 1349, 1353.) Dr. Thompson diagnosed opioid dependence, uncomplicated; PTSD, chronic; major depressive disorder, recurrent, moderate; and insomnia, unspecified. (R. at 1320, 1323, 1327, 1332, 1335, 1339, 1343, 1346, 1351, 1355, 1357.)

On July 30, 2019, Barnett completed a mental assessment, finding Collins had mild limitations in his ability to understand, remember and carry out simple job instructions. (R. at 1298-1300.) She found Collins had a satisfactory ability to follow work rules, to function independently and to maintain personal appearance. (R. at 1298-99.) Barnett opined Collins had serious limitations, resulting in an unsatisfactory work performance, in his ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to deal with

work stresses; to maintain attention/concentration; to understand, remember and carry out complex and detailed job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1298-99.) She found Collins would be absent from work more than two days a month. (R. at 1300.)

On October 22, 2019, Collins saw Barnett and reported he got sick to his stomach after his sister and her five children came to his house to visit, and he felt like he was having a panic attack. (R. at 637.) He stated he struggled to cope with anxiety. (R. at 637.) Barnett's examination findings remained unchanged. (R. at 638-39.) On October 29, 2019, Collins saw Emily C. Steffey-Stacy, P.M.H.N.P., a psychiatric mental health nurse practitioner with the Clinic, for depression, anxiety and being very overprotective of his children. (R. at 642.) He stated, "[i]f I could get a job where I could sit and do but there ain't no jobs like this." (R. at 642.) Collins was well-groomed and dressed appropriately; he had a depressed, anxious mood and congruent affect; his eye contact, insight, judgment and speech were normal; he had no suicidal or homicidal ideations; he was fully oriented; and he had no hallucinations, paranoia or delusions. (R. at 644.)

On November 12, 2019, Steffey-Stacy saw Collins for mental health follow up and medication management. (R. at 651.) Steffey-Stacy reported Collins's speech was regular; his thought process was intact; he denied suicidal and homicidal ideations and hallucinations; he had appropriate judgment and fair insight; he was fully oriented; his recent and remote memory were intact; his attention span and concentration were good; his mood was anxious and depressed; and he had an interactive affect. (R. at 655-56.) She diagnosed PTSD, chronic; opioid dependence, in remission; major depressive disorder, recurrent, moderate;

and generalized anxiety disorder. (R. at 656.) On November 19, 2019, Barnett reported Collins had minimal eye contact, limited insight and passive suicidal ideations with no plan or intent. (R. at 661.) On December 17, 2019, Collins saw Barnett and stated his sister was pregnant and scheduled to be induced later that week and she asked him to watch her six kids while she was hospitalized. (R. at 664.) Collins reported he felt overwhelmed by this request and did not believe he would be able to do it. (R. at 664.) He reported he was not sleeping well; he had difficulty focusing; and he was struggling with depression, anxiety and trauma symptoms that negatively impacted his overall functioning. (R. at 664.) Collins reported he stopped taking his psychiatric medications. (R. at 664.) Barnett's examination findings remained unchanged, except Collins had limited eye contact and insight. (R. at 666.)

On January 20, 2020, Steffey-Stacy reported Collins had passive suicidal ideations with no intent or plan. (R. at 673-74.) Collins had appropriate judgment; fair insight; he was fully oriented; his recent and remote memory were intact; his attention span and concentration were good; he was able to name objects and repeat phrases; and his mood was anxious and depressed with an interactive affect. (R. at 674.) On February 10, 2020, Collins saw Barnett and reported Zoloft helped with anger outbursts and panic attacks, but he still had depression, trauma triggers and anxiety that significantly impacted his overall functioning. (R. at 678.) Collins's mood was depressed and anxious with a congruent affect; he made limited eye contact; his insight was limited; he had normal judgment and speech; he was fully oriented; and he exhibited no hallucinations, delusions or paranoia. (R. at 679-80.)

On July 29, 2020, Collins saw Barnett and reported increased depression; financial stressors; difficulty finding words and focusing; difficulty dealing with groups of people; and increased crying spells. (R. at 692.) He stated he had a "break down" the last time he was at the Suboxone clinic and was embarrassed by his actions. (R. at 692.) There was no change in his examination findings. (R. at 694.) In August 2020, Collins reported multiple stressors, including his son's anger outbursts, which triggered his agitation and caused his "mind to go numb;" and not being able to be around family members, which caused marital problems. (R. at 696, 700, 704.) He also stated he got into an argument at his attorney's office. (R. at 696.) Barnett's examination findings remained unchanged, except Collins had mild visual hallucinations, and his speech was confused at times. (R. at 697, 701, 706.)

On September 1, 2020, Barnett completed a mental assessment, finding Collins had a satisfactory ability to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 444-46.) Otherwise, she found Collins had serious limitations to no useful ability in all other areas of occupational, performance and personal/social adjustments. (R. at 444-46.) Barnett opined Collins would be absent from work more than two days a month. (R. at 446.)

On September 16, 2020, Dr. Monika E. Pelly, M.D., a psychiatrist with Abingdon Integrative Psychiatry, evaluated Collins for depression, anxiety and medication management. (R. at 628-30.) Collins reported anxiety, sadness, mood swings, racing thoughts, insomnia, irritability and seeing things that were not there. (R. at 628.) Collins was cooperative; he was fully oriented; he had good eye contact; his speech had regular rate and rhythm; his mood was "anxious a little;"

his affect was restricted; his judgment and insight were fair; his attention span and concentration were normal; his thought processes were organized with no thought blocking; his exhibited no delusions or hallucinations; his abstract reasoning and associations were intact; and his recent and remote memory were intact. (R. at 629-30.) Dr. Pelly diagnosed bipolar I disorder, manic, unstable; generalized anxiety disorder; and PTSD. (R. at 630.) Collins continued to treat with Dr. Pelly through January 2022. (R. at 621-27, 1362-73.) Dr. Pelly routinely reported that Collins was cooperative and fully oriented; he made good eye contact; his speech was normal; his mood was irritable and anxious; his affect was restricted; his judgment and insight were fair; his attention span and concentration were normal; his thought processes were organized; his abstract reasoning was intact; and his recent and remote memory were intact. (R. at 623, 626-27, 629-30, 1363-64, 1366-67, 1369-70, 1372-73.) Dr. Pelly diagnosed bipolar 1 disorder, most recent episode depressed and unstable, generalized anxiety disorder and PTSD. (R. at 1367.)

On September 2, 2020, Collins saw Barnett and reported he was trying to spend more time with his family, but stated it was very difficult because he would get agitated and leave the room. (R. 712.) He reported seeing shadows, feeling worried and was easily startled. (R. at 712.) Barnett's examination findings remained unchanged, except she again noted mild visual hallucinations, and she noted mild paranoia. (R. at 713-14.) On September 8, 2020, Collins reported he was having more intrusive thoughts of childhood trauma. (R. at 708.) Barnett's examination findings remained unchanged, except no hallucinations and paranoia were noted. (R. at 709-10.) Collins continued to see Barnett throughout 2020, and her examination findings remained unchanged. (R. at 718-19, 726-27, 730-31, 738-39, 746-47.)

Throughout 2021, Collins continued to see Barnett for depression, anxiety and trauma triggers. (R. at 741, 753, 757, 765, 769, 1171, 1179, 1374, 1377, 1381.) Barnett's examination findings remained unchanged, except on one occasion she noted he was "frustrated, mad, tired," and on a separate occasion, she found he was quiet and needed prompting to engage. (R. at 742-43, 755, 758-59, 766-67, 770-71, 1172.) In November 2021, Collins saw Barnett, reporting his living situation had been stressful, as he had not been able to live with his wife and he had problems with his vehicle. (R. at 1374-76.) He also reported some intrusive thoughts about feeling better off dead, but denied plan or intent. (R. at 1378.) Collins was disheveled; his mood was anxious and depressed with a blunted and labile affect; his eye contact was distracted; he had limited insight and judgment; his speech was quiet, and he needed prompting to engage; he was fully oriented; and his though content was distractible. (R. at 1376, 1379, 1383.)

On April 2, 2021, Stephen P. Saxby, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Collins's depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; substance addiction disorders; and trauma and stressor related disorders were severe. (R. at 104-05.) He opined Collins had moderate limitations on his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage himself. (R. at 104.) Saxby found Collins could perform simple, unskilled work with limited public interaction. (R. at 104.) On August 6, 2021, Richard Milan, Jr., Ph.D., a state agency psychologist, completed a PRTF, which mirrored that of Saxby, except he found Collins's substance addiction disorders nonsevere. (R. at 127-28.)

That same day, Saxby completed a mental assessment, finding Collins had moderate[7] limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. (R. at 107-08.) Saxby stated Collins's work-related mental abilities were, otherwise, not significantly limited. (R. at 107-08.) On August 6, 2021, Milan completed a mental assessment, which mirrored that of Saxby. (R. at 130-32.)

On January 14, 2022, Barnett completed a mental assessment, finding Collins had a satisfactory ability to follow work rules; to use judgment in public; to function independently; to understand, remember and carry out simple job instructions; and to maintain personal appearance. (R. at 1385-87.) Otherwise, she found Collins had serious limitations to no useful ability in all other areas of occupational, performance and personal/social adjustments. (R. at 1385-86.) Barnett opined Collins would be absent from work more than two days a month. (R. at 1387.)

---

[7] The regulations define "moderate limitations" as an individual's ability to function independently, appropriately, effectively and on a sustained basis as fair. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (2022).

On January 26, 2022, Dr. Thompson completed a mental assessment, finding Collins had serious limitations to no useful ability in all areas of occupational, performance and personal/social adjustments. (R. at 1393-95.) He opined Collins would be absent from work more than two days a month. (R. at 1395.) Dr. Thompson based his findings on Collins's "debilitating" major depressive disorder and PTSD. (R. at 1393-95.) He also noted that Collins had a history of traumatic brain injury,[8] which decreased his ability to process thoughts and deal with stress. (R. at 1394.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2022). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2022).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that

---

[8] Collins reported that he sustained a concussion when he was in his 20s when he was hit by a car while riding a horse. (R. at 644.)

the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Collins argues the ALJ erred by improperly determining his mental residual functional capacity by rejecting the opinions of Dr. Thompson and Barnett. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief") at 5-7.) Collins contends the ALJ rejected these opinions without acknowledging the consistency of the imposed limitations between the two providers. (Plaintiff's Brief at 7.)

Collins filed his application in January 2021; thus, 20 C.F.R. §§ 404.1520c, 416.920c govern how the ALJ considered the medical opinions here.[9] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2022). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2022) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or

---

[9] 20 C.F.R. §§ 404.1520c 416.920c apply to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2022).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[10] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2022). The ALJ found Collins had the residual functional capacity to perform light work,

---

[10] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2022).

except he was limited to instructions and tasks that could be learned in 30 days or less; he was limited to occasional decision-making and changes in the work setting; and he could have occasional interaction with the public, co-workers and supervisors. (R. at 19.)

In making his residual functional capacity finding, the ALJ found Dr. Thompson's January 2022 mental assessment unpersuasive, as it was unsupported and inconsistent with his own treatment notes and the mental status examination findings of Collins's psychiatrist, Dr. Pelly. (R. at 27.) The ALJ noted that Dr. Thompson's treatment notes consistently describe Collins as "stable and compliant with treatment," and "alert and cooperative." (R. at 27.) The ALJ also noted that, in January 2020, Dr. Pelly found that, although Collins's mood was abnormal, he was alert with good attention span and concentration. (R. at 27.) When Dr. Pelly examined Collins multiple times between September 2020 and January 2022, she consistently found him to be cooperative; coherent; speaking with regular rate and rhythm; exhibiting fair judgment and insight, with normal attention span and concentration, organized thoughts and intact abstract reasoning; and grossly intact recent and remote memory. She rated the severity of Collins's symptoms as mild. (R. at 621, 625, 628, 1362, 1365, 1368, 1371.)

Likewise, the ALJ found Barnett's January 2022 mental assessment unpersuasive. (R. at 28.) The ALJ found that Barnett's assessment was partially supported, in that the "moderate" limitations identified were supported by Collins's subjective reports of mental health symptoms during counseling encounters. (R. at 28.) However, he found the proposed "marked" and "extreme" limitations and excessive absenteeism were not entirely supported or consistent with other evidence, considering the conservative management of Collins's mental health

conditions and the overall objective medical evidence. (R. at 28.) In particular, the ALJ noted that Collins's providers, including Dr. Thompson, Dr. Pelly and Steffey-Stacy, found him to be alert and oriented, and without obvious distractibility, lethargy or slow thinking, speech or movements. (R. at 28.)

The ALJ stated he found the opinions of the state agency psychologists "mostly persuasive" because they generally were consistent with and supported by the mental evidence of record. (R. at 26.) The state agency psychologists opined Collins could perform simple, unskilled work with limited public contact. The ALJ found these assessments were supported, in that they considered the then-available evidence about Collins's activities of daily living, medical treatment and observed mental status over time. (R. at 26.) He also found their assessments were largely consistent with more recent mental health treatment records, which did not show significant changes in Collins's overall mental health. (R. at 26.) However, the ALJ found that Collins could have no more than occasional interaction with the public, co-workers or supervisors based on his persistent reports of difficulty interacting with others due to irritability, increased anxiety around others and other mental health symptoms. (R. at 26.)

The record shows that Collins was repeatedly found to be stable and compliant with his medication assisted treatment at the Suboxone clinic. Dr. Pelly found that his mental health symptoms were "mild" in severity in recent treatment notes. She noted Collins had normal speech; fair judgment and insight; normal attention span and concentration; organized thought processes; no delusions or hallucinations; intact abstract reasoning and associations; grossly intact recent and remote memory; and average fund of knowledge. When Collins saw Steffey-Stacy in October 2019, he had normal eye contact, insight, judgment and speech.

Similarly, in March 2020, Collins exhibited appropriate judgment; fair insight; intact orientation and memory; good attention span and concentration; intact repetition and vocabulary; and interactive affect. Barnett noted Collins had normal judgment; normal speech; and no other abnormal thought content.

In addition, in February 2020, Collins reported Zoloft decreased his anger and panic attacks, and at his periodic medical appointments at Wellmont Medical Associates,[11] it was noted that Collins exhibited normal mood, affect, behavior, judgment and thought content, and he did not show confusion, agitation or decreased concentration. (R. at 489, 492, 496, 501, 678.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). As noted above, Dr. Pelly consistently found Collins to be cooperative; coherent; speaking with regular rate and rhythm; exhibiting fair judgment and insight, with normal attention span and concentration, organized thoughts and intact abstract reasoning; and grossly intact recent and remote memory. She rated the severity of Collins's symptoms as mild. Collins stated, "[i]f I could get a job where I could sit and do but there ain't no jobs like this." While in Suboxone treatment, Collins routinely reported he was doing well and staying busy.

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his mental residual functional capacity finding.

---

[11] In July 2020, Collins stated he had not been to the Suboxone clinic for the past four to five months, and he had been using his wife's Suboxone while she was incarcerated. (R. at 488.) Dr. Rose. G. Suaava, D.O., a physician with Wellmont Medical Associates, noted that Collins was noncompliant with his controlled substance contract and would be prescribed no more controlled substances. (R. at 489.)

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2. Substantial evidence exists in the record to support the ALJ's mental residual functional capacity finding; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Collins was not disabled under the Act and was not entitled to DIB and SSI benefits.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Collins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

# Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of

the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   November 16, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE